UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-CV-00092-FDW

| | |
|---|---|
| TRACIE WISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Tracie Wise's Motion for Summary Judgment (Doc. No. 11) filed on September 18, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 13) filed on November 17, 2017. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 11) and GRANTS the Commissioner's Motion for Summary Judgment (Doc. No. 13).

**I. BACKGROUND**

Plaintiff filed an application for disability benefits under Title II and XVI on October 1, 2013, alleging disability (Tr. 20, 71). After her application was denied initially and upon reconsideration (Tr. 121, 129), Plaintiff requested a hearing (Tr. 138). After a hearing on

December 15, 2015, the ALJ issued an unfavorable decision. (Tr. 17, 32, 39). Plaintiff's request for review by the Appeals Council was denied on January 27, 2017. (Tr. 1).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2013 and had severe impairments of anxiety disorder with PTSD features and panic disorder with agoraphobia. (Tr. 22). The ALJ determined that none of these impairments nor any combination of the impairments meet or medically equal a per se disabled medical listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 23). The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, see 20 C.F.R. § 416.967, with the following nonexternal limitations:

> [Plaintiff is] limited to simple, routine, one and two-steps tasks. The claimant should have no public interaction, limited interaction with co-workers, and occasional supervision.

(Tr. 24). The vocational expert ("VE") testified that subject to the limitations in the RFC, Plaintiff could not perform any of her past relevant work. (Tr. 30). However, in response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the VE testified that Plaintiff could perform jobs in the national economy and produced a list of a significant number of jobs that Plaintiff could perform with her limitations (Tr. 31). Thus, the ALJ concluded that Plaintiff was not disabled, as defined under the Social Security Act. (Tr. 32).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Plaintiff claims that the ALJ's decision should be reversed because the ALJ's decision (1) did not include a limitation in the RFC for concentration, persistence, and pace or explain the omission and (2) improperly evaluated some medical opinion evidence.[1]

---

[1] Plaintiff has not argued that there is insufficient evidence to support the ALJ's decision, but the Court nevertheless summarizes the sufficient evidence supporting the ALJ's decisions and concludes herein that there is sufficient evidence to support the ALJ's decision.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step

process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"

4

> 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

**A. Concentration, Persistence, and Pace**

Relying on Mascio, Plaintiff assigns error to the ALJ's failure to account for Plaintiff's moderate difficulties in concentration, persistence, and pace in the RFC. (Doc. 12 at 4-5). However, an ALJ may find limitations in concentration, persistence, or pace do not effect a claimant's ability to work and decline to incorporate a limitation into the RFC. See Mascio, 780 F.3d at 638; see also McNutt v. Berryhill, No. 1:16cv00001, 2017 WL 1323471 at *7 (W.D. Va Apr. 10, 2017); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204 at *5 (N.D.W.Va. June 16, 2015). As explained by other district courts, "Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in

5

the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision[.]" Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10–12 (W.D. Va. Aug. 20, 2015)). Thus, where the ALJ's discussion of the record allows for the Court to meaningfully review the ALJ's conclusion, remand is not appropriate. Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558, at *7 (M.D.N.C. Sept. 22, 2017) ("An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court." (quoting Jones, 2015 WL 5056784, at *10–12)); Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining Plaintiff's mental RFC, and his explicit reliance on Dr. Estock's opinion adequately explains why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions in the ALJ's hypothetical to the VE."); see Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) ("[T]he RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" (quoting SSR 96-8p)).

Plaintiff argues that the ALJ has failed to address whether or not Plaintiff can stay on task despite finding moderate difficulties in concentration, persistence, and pace. However, a review of the ALJ's decision reveals that the ALJ has explained through a narrative discussion how evidence supports its conclusion in the RFC. (Tr. 24-30). The ALJ found that the allegations of limitations in Plaintiff's report, along with her boyfriend's and sister's, "would *not* preclude her from performing work at the above-stated residual functional capacity." (Tr. 28) (emphasis

6

added). When doing so the ALJ considered Plaintiff's allegation that "she had trouble with her memory, as well as concentration and focus." (Tr. 27). In other words, the ALJ concluded Plaintiff's moderate difficulties with memory, concentration, and focus do not preclude her from performing work that is "limited to simple, routine, one and two-step tasks" with "no public interaction, limited interaction with co-workers, and occasional supervision." (Tr. 24).

The ALJ further found that the intensity, persistence, severity, and limiting effect of the symptoms alleged by Plaintiff "not entirely credible" and "not entirely consistent with the evidence of record." (Tr. 27, 28). Specifically, the ALJ discussed the lag between the event that triggered Plaintiff's mental health impairments—a motor vehicle accident in January of 2013—and her "seek[ing] any mental health treatment until later in 2013." (Tr. 28, 367-70, 582-85). The ALJ then highlighted that all testing after the accident (Tr. 28, 582-85) and later neurological tests in June of 2013 were normal (Tr. 28, 400). All psychiatric examinations by primary care physicians at Mission My Care were "within normal limits, with some noted depression or anxiety." (Tr. 28, 357, 359, 362, 366, 369, 817, 857, 872, 904, 935, 951). A MRI on the brain and cervical spine were normal (Tr. 26, 28, 401), and testing revealed she had average intelligence, memory, and academic ability "with no indication of any cognitive impairment since the accident" (Tr. 27, 564-66). Additionally, the ALJ found the record replete with inconsistent representations of Plaintiff's limitations. (Tr. 28). Plaintiff reported to some that she quit her job due to anxiety and panic while to others she represented that she was fired after missing work. (Tr. 28, 1582). Some treatment records also indicate she shopped with her boyfriend and cleaned her house obsessively while she reported that she did not go to stores and was confined to her bedroom. (Tr. 28).

The ALJ then noted that Plaintiff's anxiety and panic "are stable and better controlled when she is complaint with her medication regimen" and the record shows she has been "able to get out

7

more," "tak[e] trips," "get[] in a car to attend family events" and "drive a few times." (Tr. 28, 540, 1566). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Further, the ALJ considered that Plaintiff's limitations did not prevent her from caring for her children, preparing meals, cleaning, sitting outside every hour, camping four times a year, attending all her doctor's appointments, riding in a car for eight hours, and spending the holidays with family. (Tr. 26, 28, 76, 281-288, 1566). See generally Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."); SSR 96-8p ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as . . . [r]eports of daily activities").

The ALJ also gave great weight to the medical opinions of Dr. Allan Goldstein and Dr. Dixie Moore, who were both present at the hearing. (Tr. 29). Dr. Goldstein testified that "he could find no medical ailment that would keep claimant from work if she could get there." (Tr. 29; see also Tr. 49). Dr. Moore also opined that "claimant could sustain a 40 hour work week, and the need for breaks due to panic would be minimal, but [Plaintiff's work] should be limited to simple and low-level detail work due to attention issues because of panic" "with limited contact with co-workers and supervisors" and no contact with the public. (Tr. 25; see also 51-52).

This analysis of the evidence in the record, especially the reliance on Dr. Moore's medical opinion, explains the ALJ's decision not to include additional work-related limitations in the RFC to account for Plaintiff's moderate difficulties in concentration, persistence, and pace beyond limitations to "simple, routine, one and two-step tasks . . . [with] no public interaction, with limited interaction with co-workers, and occasional supervision" (Tr. 28; see also Tr. 24). Therefore, this case is distinguishable from Mascio, where the ALJ gave no explanation of the omission. 780

8

F.3d at 638. Thus, the ALJ fulfilled his responsibility of explaining the omission of additional limitations for concentration, persistence, and pace in the RFC, which allowed this Court to conduct a meaningful review and affirm that substantial evidence supports the ALJ's decision.

**B. Medical Opinions**

Plaintiff argues the ALJ erred by giving weight to the opinions of Dr. Fulmer and Dr. Fiore without incorporating their findings into the RFC. (Doc. No. 12 at 5). Specifically, Plaintiff contends the ALJ gave great weight to the opinion of state agency psychological consultant Dr. Fulmer but disregarded his finding that Plaintiff "would have some difficulty maintaining attention and concentration in order to complete simple tasks" (Doc. No. 12 at 5 (citing Tr. 28, 90)) and found examining psychological consultant Dr. Fiore's opinion that Plaintiff "would likely have moderate problems performing repetitive tasks for sustained periods of time" "generally consistent with the evidence" but failed to incorporate this limitation into the RFC (Doc. No. 12 at 5-6 (citing Tr. 29)). Plaintiff's contentions, however, do not warrant relief. First, the ALJ in fact only gave "some weight" to Dr. Fulmer's opinion (Tr. 28) and only gave "some weight" to Dr. Fiore's opinion (Tr. 29). Second, the ALJ did consider, discuss, and explicitly weigh the opinions of Dr. Fulmer and Dr. Fiore[2]. (Tr. 23, 27, 28, 29). See Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."). Third, determinations of the Plaintiff's RFC is an issue reserved to the commissioner. 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(d)(1), (2). The ALJ considers and uses the medical opinions of the medical or psychological consultants to determine the RFC, but the ALJ is not required to accept an opinion as determinative of the RFC. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see generally

---

[2] Numerous courts have upheld discounting of medical opinions that qualify an opinion with "may" or "likely." See e.g., Guest v. Colvin, No. 1:15CV00776, 2016 WL 4007612, at *4 (M.D.N.C. July 26, 2016) (collecting cases).

POMS DI 25020.010. The RFC is also the most the claimant "can do despite his or her limitations or restrictions"—not the least. SSR 96-8p (emphasis omitted); see also 20 C.F.R. § 404.1545(a)(1). And most importantly, the ALJ's narrative discussion explains why he gave only "some weight" to Dr. Fulmer's opinion of "some difficulty maintaining attention and concentration" and Dr. Fiore's opinion that Plaintiff "would likely have moderate problems performing repetitive tasks for sustained periods of time." See SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). As discussed previously, the ALJ found upon its review of the record and the opinion of Dr. Moore that Plaintiff's difficulty in maintaining concentration for a sustained period of time is accounted for by limiting Plaintiff "to simple, routine, one and two-step tasks" with "no public interaction, limited interaction with co-workers, and occasional supervision." (Tr. 24). Therefore, what Plaintiff claims is inconsistent is in fact reconciled by the ALJ's narrative discussion. Thus, the ALJ incorporated all relevant parts of Dr. Fulmer's and Dr. Fiore's opinions into the RFC, and by reading the whole narrative discussion, this Court can and has assessed and affirmed that sufficient evidence supports the ALJ's conclusion.

Plaintiff has also not cited to any binding precedent, statutes, or regulations to suggest that more is required of the ALJ to avoid remand. In an unpublished Fourth Circuit decision cited by Plaintiff, the court ordered remand to the agency because "there is probative evidence in the record to support a determination that [claimant's] impairment meets or equals Listing 1.03." Ezzell v. Berryhill, 688 F. App'x 199, 201 (4th Cir. 2017). The court then stated "[f]urthermore, the ALJ's decision does not include a sufficient discussion of the evidence and explanation of its reasoning regarding [claimant's] ability to ambulate effectively such that meaningful judicial review is possible with respect to Listing 1.03." Id. Here, Plaintiff has not challenged the ALJ's analysis

of a listed impairment in step three. Also, as discussed at length, the ALJ has provided a sufficient discussion of the evidence and explanation of its reasoning that supports its omission of additional work limitations for Plaintiff's moderate difficulties in concentration, persistence, and pace, as found by Dr. Fulmer and Dr. Fiore, and its inclusion of other work limitations found by Dr. Moore. Further explanation is not needed to resolve any inconsistency or for this Court to meaningfully review the ALJ's decision. The Court finds the ALJ applied the correct legal standards and committed no legal error.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; the Commissioner's Motion (Doc. No. 13) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: December 12, 2017

_____
Frank D. Whitney
Chief United States District Judge